30 C.C.P.A. (Patents)

## In re WALKER et al.
### Patent Appeal No. 4736.

Court of Customs and Patent Appeals.
May 3, 1943.

Charles C. Scheffler and Eugene L. Greenewald, both of New York City (Wm. F. Mesinger and Donald C. Harrison, both of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 1, 2, and 3, in appellants' application for a patent for an alleged invention relating to a method of scarfing or removing defective surface metal from a ferrous metal body, such as a steel billet, in relatively wide shallow channels.

Claim 1 is illustrative of the appealed claims. It reads:

"1. Method of scarfing or gouging a shallow layer of surface metal from a ferrous metal body, such as a steel billet, which comprises heating at least a portion of the surface of said billet to be gouged to an ignition temperature; providing a relatively voluminous stream of oxidizing gas; reducing the velocity of flow of said stream; discharging said stream through an orifice elongated transversely of the direction of flow to provide a substantially sheet-like stream having a predetermined velocity; directing said stream at an acute angle against the preheated surface portion; maintaining said sheet-like stream positioned with its longer transverse dimension substantially parallel to said surface; and relatively moving said stream and said surface in a direction parallel to the surface and in the general direction of flow of said stream."

The references are: Walker, 1,726,327, Aug. 27, 1929; Ross, 1,955,977, Apr. 24, 1934; Crowe, 1,985,080, Dec. 18, 1934.

Appellants state in their application that the relatively wide, shallow channels produced by their method have "gradual side slopes," and that the metal forming such slopes will not be folded over during the subsequent rolling operation and cause concealed cracks or defects in the body of the metal which frequently occurs where defective surface metal is removed by a narrow gouge.

As appears from the quoted claim, the surface of the metal to be scarfed is heated to an ignition temperature and then subjected to a relatively voluminous stream of oxidizing gas which is discharged at a low velocity of flow through an "orifice elongated transversely of the direction of flow to provide a substantially sheet-like stream having a predetermined velocity." The sheet-like stream of oxidizing gas is directed at an acute angle against the preheated surface portion of the steel billet with its "longer transverse dimension" positioned "substantially parallel to said surface," and is moved parallel to the surface of the steel body and in the direction of the flow of the stream.

Appellants' application discloses a device for carrying out the method defined by the appealed claims, and it is stated therein that "The curvature of the scarf may be controlled by the shape of the oxygen discharge orifice for any given projected length of orifice opening upon the work. It has been found that a nozzle having a circular orifice of a given diameter cuts a scarf with a smaller radius of curvature at the bottom than a nozzle having an oblong orifice [such as is defined by the appealed claims] with a major axis equal to the diameter of the circular orifice."

It is further stated in appellants' application that for making broad surface cuts, such as is contemplated by the method defined by the appealed claims, a nozzle having an oblong orifice discharges an oblong or ribbon-like column of oxygen which removes a greater area of surface of metal per cubic foot of oxygen consumed; that wider and smoother scarfs are thus produced, and "fewer ridges [are] formed by the juncture of one scarf with another, and the tendency to form fins or slivers along these ridges or at the marginal edges of the scarf is reduced"; and that by advancing the stream of oxidizing gas in the direction of the flow of the stream, a uniform speed of operation may be maintained.

The patent to Walker relates to a torch tip adapted to be used in a cutting torch for gouging out seams or other defects in steel billets, and discloses a device quite similar to that disclosed in appellants' application. In the patentee's device, a voluminous stream of oxidizing gas having a low velocity is discharged through a round orifice, instead of an "orifice elongated transversely of the direction of flow" of the stream as in appellants' method. The patentee states:

"In order to remove a seam or snake from a billet, the torch is held so that the tip is *directed obliquely to the surface of the billet and crosswise of the seam,* the stream of oxygen for gouging being caused to impinge against the surface at a distance from the seam. The oxygen stream, aided by the heating jets, burns the metal of the billet and blows away the oxide by a scooping action, *and as the tip is moved lengthwise of the seam a broad gouge is easily formed which entirely eliminates the defect and which will not close up in subsequent rolling. For this action, a comparatively large, low velocity outflowing stream of oxygen is desired.*" (Italics not quoted.)

The patentee also states that "any suitable torch body of the cutting torch type may be employed."

It will be observed that the structure and the method disclosed in the Walker patent differ from the structure disclosed in appellants' application and the method defined by the appealed claims in two respects, to wit: (1) The orifice in the patentee's structure through which the oxidizing gas is discharged is round, whereas, in appellants' structure and in their claimed method, the orifice through which the oxygen is discharged is oblong or, as stated in the quoted claim, "elongated transversely of the direction of flow" of the stream of oxidizing gas; and (2) in the patentee's disclosure, although the tip of the torch is "directed obliquely to the surface of the billet," the torch is held or operated in such manner that the stream of oxidizing gas is *directed crosswise of the defect* in the metal surface to be removed, whereas, in appellants' method, the nozzle of the torch is moved in the *direction of the flow of the stream of oxidizing gas.*

In its decision, the Board of Appeals stated that the patent to Ross was not pertinent to the issues presented. Accordingly, that reference need not be considered here.

The patent to Crowe relates to a process for cutting a narrow kerf through a metal body by means of a narrow stream of oxidizing gas. The patentee's disclosure does not relate to the removal of defects in the surface of steel billets, and the method he discloses is entirely different from that defined by the appealed claims. That patent was cited solely for the purpose of showing the disclosure of a torch having an oblong orifice, that is, an orifice elongated transversely of the direction of the flow of the stream of oxidizing gas.

The record contains a patent to R. M. Rooke, Jr., No. 1,732,912, issued October 22, 1929, on an application filed June 2, 1928. It is stated in the brief of the Solicitor for the Patent Office that that patent was included in the record because reference was made to it in the Crowe reference patent. However, it was not cited as a reference, nor was it discussed in the decisions of the tribunals of the Patent Office. The patent relates to a method of removing defects from steel billets, and discloses, as does the Walker patent, the gouging out of defects by "burning the metal away in an oxygen stream scooping *crosswise of the defect.*" (Italics ours.) The patentee states that the "gouge" might be made of any width and of "sufficient depth." Nothing is said in the patent as to the form of the orifice in the nozzle. We have referred to that patent only because it is contained in the record and discussed in the briefs of counsel.

In its decision, the Board of Appeals stated that the patentee Walker, like appellants, disclosed the cutting of a broad gouge by using a "comparatively large, low velocity outgoing stream of oxygen * * * as

well as auxiliary jets for preliminary heating of the metal," and that if the tip of the torch in the Walker patent "is moved lengthwise of the seam and blows away the oxide [as stated by the patentee], it would act just as appellants have described their action." The board also stated that, although the patent to Walker did not disclose an "orifice elongated transversely of flow" of the oxidizing gas, as called for by the appealed claims, the patent to Crowe suggested the use of such an orifice, and that there would be no invention in cutting the broad gouge disclosed by Walker by the use of the nozzle disclosed in the patent to Crowe. The board concluded its decision by stating: "Moreover it would appear obvious to use the Walker nozzle in various positions to the work including that described by appellants."

It is evident from what has been said that the references do not disclose the method defined by the appealed claims. Nor is there any suggestion in the references of discharging a voluminous stream of oxidizing gas through an orifice elongated transversely of the flow of the stream and moving the stream in the direction of its flow for the purpose of removing defects from the surface of a steel billet, as called for by the appealed claims.

It is true that the Walker patent discloses the use of an oxidizing gas in a voluminous stream at a reduced velocity of flow obliquely to the surface of the billet to produce a broad gouge. However, the Walker patent teaches that the stream of oxidizing gas should be directed *crosswise,* and moved *lengthwise,* of the defect to be removed. A similar method is taught in the patent to Rooke. We are unable to agree, therefore, with the views expressed by the board, that the method disclosed by Walker is similar to the method defined by the appealed claims.

If, as suggested by the board, the torch in the Walker disclosure was provided with an orifice elongated transversely of the direction of the flow of the stream of oxidizing gas, disclosed in the patent to Crowe, the appealed claims would not be met because, if the teachings of Walker were followed, the stream of oxidizing gas would be directed *crosswise* of the defect in the metal surface and moved lengthwise thereof, instead of being moved in the direction of its flow as in appellants' method. Furthermore, it is obvious, as argued by counsel for appellants, that by following the teachings of Walker, with or without the suggested modification of the Walker device, the molten slag produced in the gouging process will be forced to one side of the defective surface and its heat wasted, whereas in appellants' method the molten slag is forced to flow directly ahead of the stream of oxidizing gas onto the surface of the metal to be removed and the heat from the molten slag aids in heating the metal surface to be removed. It is evident, therefore, that by appellants' method the scarfing or gouging of a shallow layer of surface metal from a steel billet can be accomplished more rapidly than by the prior or art method.

That appellants' method is new and useful, is not questioned, and as it is neither disclosed nor suggested by the prior art, we are of opinion that it involves invention.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.